[No. 8033.]

## CLAYTON V. THE CIVIL SERVICE COMMISSION.

1. STATUTES—*Construed—Civil Service Act*—A statute (Rev. Stat. c. XXVI) provided for the appointment of commissioners of the civil service; for an examination of those applying for appointment in such service; (sec. 3) that the commission "may appoint a secretary who shall be chief examiner", and "superintend any examination under this act"; and (sec. 4) that the commissioners "may designate one of their number to act as examiners, or one or more persons in the service of the state, or of any municipality affected by the act" &c. A later act amended section 3 so as to provide that the employees of the commission should be "a secretary and chief examiner, and such examiners, stenographers and other assistants as the commission may deem necessary". *Held*, that under the amendment the commissioners might appoint as examiner one not of their number, nor of the class designated in sec. 4; that the purpose of the amendment was to free the commission from inconveniences arising from insufficiency of assistance in the performance of its duties, or from the requirement that the secretary should attend every examination; that the appointment of one not of the class described in section 4 was not in violation of the the statute, or of a rule of the commission that questions propounded to candidates should be kept secret.

2. CERTIORARI—*Administrative Body Exceeding Jurisdiction*—The appointment by the civil service commission, as examiner, of one not of the class designated in the statute (Rev. Stat. Sec. 617), and an examination by such examiner, is not an excess of jurisdiction. , Certiorari thereto by a dissatisfied candidate quashed.

*Error to Denver District Court.*—HON. CHARLES CAVENDER, Judge.

Mr. GREELEY W. WHITFORD, for plaintiff in error. .

HON. FRED FARRAR, Attorney General, Mr. NORTON MONTGOMERY, Assistant Attorney General, Mr. E. L. REGENNITTER, of Counsel, for defendant in error.

Mr. CHARLES O'CONNER, Mr. ARCHIBALD A. LEE, Mr. HARRY C. RIDDLE, *Amici Curiæ*.

Mr. JUSTICE WHITE delivered the opinion of the court:

Upon a petition filed by William L. Clayton, who alleged therein that he is the present commissioner of insurance of the State, the trial court granted a writ of *certiorari*, directed to the civil service commission, to review its proceedings relative to a competitive examination held on January 23, 1913, for the purpose of obtaining an eligible list of persons for the office of commissioner of insurance. The writ was granted without notice and, before return thereto, the civil service commission questioned the sufficiency of the writ, and moved to quash the same. The motion was sustained, the writ quashed and petitioner brings the matter here for review.

The petitioner participated in the examination, and, upon the grades received, was entitled to, and by the commission, accredited with, sixth place in the eligible list. With this rating he was not satisfied, and claims that the eligible list made by the civil service commission from the grades and ratings of those taking the examination is void and should be held for naught. This claim is based upon the allegation that the questions propounded in that examination were prepared, and the answers thereto given, marked and graded by, Frederick W. Standart who was not, at the time, of that class of persons enumerated in section 4 of the civil service law, from which class alone it is claimed the civil service commission had power to select a person, other than its secretary, to perform the functions entrusted to, and performed by Standart. This constitutes the alleged excess of jurisdiction or abuse of discretion essential to review, by *certiorari*, the proceedings of an inferior body or tribunal exercising judicial functions.

The motion to quash the writ is based upon the grounds: that the petition fails to state a cause of action;

that the civil service commission was neither a judicial tribunal, nor performing judicial functions in conducting the examination in question; and if it were a tribunal performing judicial functions, the acts then done and performed were within its jurisdiction and not an abuse of discretion.

Earnest arguments are made and numerous authorities cited by either side upon the question as to the nature of the general functions performed by the civil service commission, and of the particular acts in question. The writer of this opinion would be willing to affirm the judgment, upon the ground that the acts of which complaint is made were in no sense judicial, and not subject to review by *certiorari*. The majority of the members of the court, however, with whom the writer hereof concurs, thinks the matter can properly be disposed of without determining those questions herein. We are satisfied upon the whole record, irrespective of the nature of the functions performed, that the writ was properly quashed. Were we to assume that the civil service commission is a judicial tribunal or board, exercising judicial functions in the matter of which complaint is made, we think it neither exceeded its jurisdiction, nor abused its discretion in the premises.

We are not impressed with the argument of petitioner that section 4 of the civil service act, Session Laws 1907, pp. 262, 263, limits the civil service commissioners, in selecting examiners to the class of persons therein named. Section 3 of the act, as amended at the general election on November 5, 1912, authorizes the commissioners to appoint a secretary and chief examiner, and such examiners, stenographers and other assistants as they may deem necessary. These are employees of the commission. The compensation of the secretary and chief examiner is designated by the section, while the compensation of the other employees is to be fixed by the commis-

sion. Section 4 of the act provides, that whenever desirable, the commissioners may designate one or more of their number to act as examiners, or one or more persons in the service of the state, etc., with the consent of the head of the department or office in which such person is employed, to act as assistants to the commissioners in any examination held under the act. It will be observed that section 3 deals exclusively with employees of the commission, while section 4 mentions and legislates only as to the commissioners themselves, persons in the service of the state, or certain municipalities thereof, and in no sense employees of the commission. Clearly section 4 does not restrict or limit the power of the commissioners as defined in section 3. The latter section empowers them to employ "examiners, stenographers and other assistants," while the former does not purport to authorize the employment of any person. It only empowers the commission to designate one or more of their own number, whenever desirable, to "act as examiners;" or, under like circumstances, with the consent of certain designated public officials, to appoint persons already in other branches of the public service, to act as assistants to the commissioners in any examination. It could be said, more properly, that section 4, instead of limiting the power vested in the commission by section 3, simply imposes, under certain contingencies, and for a temporary time only, incidental duties upon certain public officials to be performed without additional compensation. Moreover, when we compare section 3 as it appeared in Session Laws of 1907, with the same section as amended by the vote of the people in 1912, and bear in mind that section 4, as it now is, appears in the original act, the meaning we have ascribed to the two sections of the law is made more apparent. Section 3, prior to amendment, did not authorize the employment of other examiners, and made it incumbent upon the secretary as chief examiner, to

superintend, under the direction of the commission, any examination under the act, and limited the commission in the employment of other assistance to clerical help. Now, if section 4 designates and limits the class of persons that may be entrusted with the preparation of the questions, the marking of the answers thereto, and the conduct of examinations, such also was its effect prior to the amendment of section 3. Why then did the law-making power enlarge the provisions of section 3, and authorize the employment of examiners, stenographers and other assistants as deemed necessary by the commission, and eliminate the requirement that the secretary and chief examiner should superintend every examination? The answer is clear. Its purpose was to free the commission from any inconvenience it suffered from insufficient help or assistance in the performance of its duties, or by the requirement that the secretary and chief examiner should superintend every examination.

Contrary to the contention of petitioner, we find nothing in the civil service law which requires either the commissioners, their secretary and chief examiner, or any other particular person or persons to prepare the questions to be propounded, or to mark or grade the answers thereto. This may be done by whomsoever the commission lawfully employs and entrusts with the duty. Such person then becomes an examiner or an assistant. The petition does not allege that Standart was not an examiner or assistant in the employ of the commission. It questions his acts only because he was not of the class enumerated in section 4 of the law. Upon the claim that the questions were known to "Standart and others," and were therefore, not kept secret as required by rule of the commission, it is sufficient to say that knowledge of the questions by employees of the commission is not in violation of either the spirit of the rule or the law. Questions to be propounded must necessarily be framed and prepared,

and whosoever does this work knows the questions in advance of the examination. The spirit of the rule is that the questions shall not be communicated or become known to others than the commission or those in its employ, or assisting it in the discharge of its duties, under the provisions of the act, prior to the examination in which they are used. Its object and purpose is that no one desiring to take the examination shall be favored over another, and there is no allegation or claim that the questions were previously known to any person taking the examination.

By quashing the writ of *certiorari* the petitioner has been deprived of no substantial right. The judgment is, therefore, affirmed.

Decision *en banc.*

Mr. JUSTICE HILL and Mr. JUSTICE SCOTT dissent.